Maurice SHAPIRO et al., Plaintiffs-Appellees,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants-Appellants.

No. 270, Docket 73-1677.

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1974.

Decided April 3, 1974.

---

Donald N. Ruby, New York City (Lester L. Levy and Wolf, Popper, Ross, Wolf & Jones, New York City, on the brief), for plaintiffs-appellees Maurice Shapiro, Isadore Shapiro, William M. Naigles, Chaylie Saxe and Thomas F. Gibson, Jr.

Roger J. Hawke, New York City (Brown, Wood, Fuller, Caldwell & Ivey, New York City, on the brief), for defendants-appellants Merrill Lynch, Pierce, Fenner & Smith, Inc., Winthrop Lenz, Julius H. Sedlmayer, Gillette K. Martin, Dean S. Woodman, Edward N. McMillan, Phillip F. Bilbao, Norman H. Heindel, Jr., Lee W. Idleman, Lawrence Zicklin, James A. McCarthy, Elias A. Lazor and Chester T. Smith, Jr.

Samuel E. Gates, New York City (Debevoise, Plimpton, Lyons & Gates, New York City, on the brief), for defendants-appellants Burden Investors Services, Inc. and William A. M. Burden & Co.

Shearman & Sterling, New York City, for defendants-appellants Anchor Corp., City Associates and Fairfield Partners.

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendant-appellant Madison Fund, Inc.

Shereff, Friedman, Hoffman & Goodman, New York City, for defendants-appellants J. M. Hartwell & Co., J. M. Hartwell & Co., Inc., Hartwell Associates and Park Westlake Associates.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant-appellant Van Strum & Towne, Inc.

Sullivan & Cromwell, New York City, for defendant-appellant Fleschner Becker Associates.

Seward & Kissel, New York City, for defendants-appellants A. W. Jones & Co. and A. W. Jones Associates.

Before DANAHER,* LUMBARD and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal presents important questions, some of first impression, involving the scope of the antifraud provisions of the federal securities laws in their application to transactions on a national securities exchange when material inside information has not been disclosed.

Specifically, the questions presented are (1) whether Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 were violated by a prospective managing underwriter of a debenture issue and the underwriter's officers, directors and employees when they divulged material inside information to the underwriter's customers for the purpose of protecting the latters' investments in the stock of the issuer; (2) whether the same antifraud provisions of the securities laws were violated by the underwriter's customers when they traded in the stock of the issuer without disclosing the material inside information which had been divulged to them by the underwriter; and (3) whether those

---

* Senior Circuit Judge of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

referred to above, if they did violate the antifraud provisions of the securities laws, are liable in damages to those persons who during the same period purchased stock in the same company in the open market without knowledge of the material inside information. In short, this case involves the liability of nontrading "tippers" and trading "tippees" under Section 10(b) and Rule 10b–5.

Defendants appeal, pursuant to 28 U.S.C. § 1292(b) (1970), from an order entered in the Southern District of New York, Charles H. Tenney, District Judge, 353 F.Supp. 264 (S.D.N.Y.1972), denying their motion for judgment on the pleadings on the ground that the complaint failed to state a claim upon which relief can be granted.

The action was brought to recover damages claimed to have been sustained as the result of defendants' trading or recommending trading of common stock of Douglas Aircraft Company, Inc. (Douglas) on the New York Stock Exchange (NYSE) in 1966. Such acts or transactions are alleged to have violated Sections 10(b) and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78o(c)(1) (1970); Rules 10b–5 and 15c–1 and 2, 17 C.F.R. §§ 240.106–5 and 240.156–1 and 2 (1973), promulgated by the Securities and Exchange Commission (SEC); and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1970).[1]

Applying to the admitted facts before us what we believe to be controlling principles of law as enunciated by the Supreme Court and by our Court, we affirm.

## I.

■ In summarizing here the facts necessary to a determination of the legal issues raised on this appeal, we must take as admitted the well-pleaded material facts alleged in the complaint, as the district court did, 353 F.Supp. at 268, since the order under review denied defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12 (c).[2]

The course of events which culminated in the instant action occurred during the period April 1966 through July 1966. During this period, Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch) was engaged as the prospective managing underwriter of a proposed Douglas offering of $75,000,000 principal amount of a new issue of 4¾% convertible subordinated debentures. A registration statement for this offering was filed with the SEC on June 7; it became effective on July 12, with Merrill Lynch the managing underwriter. On June 7, Douglas had released an earnings statement which reported the results of operations for the first five months of its 1966 fiscal year, i. e. through April 30, 1966.[3] This statement indicated that Douglas had earned 85 cents per share on its common stock during that period.

1. Jurisdiction is grounded upon Section 27 of the 1934 Act, 15 U.S.C. § 78aa (1970), and Section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a) (1970). Both acts give to the district courts jurisdiction over all actions brought to enforce any liability or duty created by the respective acts "irrespective of the amount in controversy or the citizenship of the parties." III Loss, Securities Regulation 2005 (2d ed. 1961), citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289 (1940), and *Wilko v. Swan*, 346 U.S. 427, 431 (1953).

Section 27 of the 1934 Act, moreover, is unique in that it gives *exclusive* jurisdiction to the district courts of violations of that act or

the rules and regulations thereunder, whereas the state courts are given concurrent jurisdiction over private actions under the other federal securities acts. III Loss, *supra*, at 2005.

2. 2A Moore, Federal Practice ¶ 12.08 (2d ed. 1972).

This is so despite defendants' assertion of a Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted in their Rule 12(c) motion, as permitted by Rule 12 (h)(2). 5 Wright & Miller, Federal Practice and Procedure: Civil § 1367, at 688–89 (1969).

3. Douglas' fiscal year begins December 1 and ends November 30.

During the period June 17 through June 22, Merrill Lynch and certain of its officers, directors and employees (the individual defendants) [4] were advised by Douglas' management of certain material adverse inside information regarding Douglas' earnings.[5] This information was essentially that (a) Douglas would report substantially lower earnings for the entire first six months than it had reported for the first five months of its 1966 fiscal year; (b) Douglas had sharply lowered its estimate of earnings for its full 1966 fiscal year in that it now expected to have little or no profit for that year; and (c) Douglas had substantially reduced its projection of earnings for its 1967 fiscal year. This information was given to Merrill Lynch solely because of its position as the prospective underwriter for the Douglas debenture issue. The individual defendants and Merrill Lynch knew or should have known that the information had not yet been publicly announced.

During the period June 20 through June 24, Merrill Lynch and the individual defendants disclosed this confidential information to the following Merrill Lynch customers (the selling defendants), most of whom were institutional investors: Investors Management Co., Inc. (a wholly owned subsidiary of Anchor Corporation), Madison Fund, Inc., J. M. Hartwell & Co. (predecessor of J. M. Hartwell & Co., Inc.), Hartwell Associates, Park Westlake Associates, Van Strum & Towne, Inc., Fleschner Becker Associates, A. W. Jones & Co., A. W. Jones Associates, City Associates, Fairfield Partners, Burden Investors Services, Inc. and William A. M. Burden & Co. The selling defendants knew or should have known that this information had not yet been publicly announced.

During the period June 20 through June 23, the selling defendants either sold from existing positions or made short sales of more than 165,000 shares of Douglas common on the NYSE. This was approximately one-half of the total number of Douglas shares sold on the NYSE during this period. These sales were made prior to Douglas' public disclosure of the revised earnings information on June 24 [6] and without the sellers having disclosed this information to the investing public, including plaintiffs. As a result of these sales, the individual defendants and Merrill Lynch received commissions from the execution of the selling defendants' orders and also received compensation in the form of customer directed "give ups"—i. e. division of commissions earned by other brokers who executed orders for the selling defendants.

On June 23, plaintiff Gibson purchased an unspecified number of shares

---

4. Of the twelve "individual defendants", referred to in the district court opinion and in the briefs as "employees" of Merrill Lynch, five were salesmen in the New York institutional sales office of Merrill Lynch (i. e. defendants Lee W. Idleman, Lawrence Zicklin, James A. McCarthy, Elias A. Lazor and Chester T. Smith, Jr.).

The other seven individual defendants were vice presidents of Merrill Lynch (i. e. defendants Winthrop Lenz, Julius H. Sedlmayer, Gillette K. Martin, Dean S. Woodman, Edward N. McMillan, Phillip F. Bilbao and Norman H. Heindel, Jr.).

Of the latter, three were directors of Merrill Lynch (i. e. Lenz, Sedlmayer and McMillan).

Each of the vice presidents occupied positions of special significance in the Merrill Lynch organization in the context of the issues in this case. Lenz was chairman of Merrill Lynch's executive committee and was in charge of underwriting; Sedlmayer was director of the underwriting division; Martin was head of the corporate buying department of the underwriting division; Woodman was in charge of the west coast underwriting office; McMillan was director of the institutional and equity sales division; Bilbao was manager of the institutional sales department and municipal sales division; and Heindel was manager of the New York institutional sales office.

5. This information, sometimes described as "nonpublic information", is referred to in this opinion as "inside information".

6. On the morning of June 24, Douglas issued a press release which reported that its earnings for the first six months of its 1966 fiscal year, i. e. through May 31, were 12 cents per share and that it expected that its earnings for the full 1966 fiscal year would be nominal, if any.

of Douglas common on the NYSE; his purchase was prior to the public release on June 24 of Douglas' revised earnings report. The other four plaintiffs— Maurice Shapiro, Isadore Shapiro, Naigles and Saxe—purchased an unspecified number of shares of Douglas common on the NYSE on June 24; their purchases were made without knowledge of the material adverse earnings information released by Douglas that day.[7]

Beginning about June 22 or 23, the market price of Douglas common on the NYSE took a sudden and substantial drop.[8] This coincided with and, according to the complaint, was caused by the substantial sales by the selling defendants on the basis of material inside information, the disclosure of which after plaintiffs' purchases precipitated a further severe drop in the market price of Douglas common.

On August 21, 1970, plaintiffs commenced the instant action in the Southern District of New York. They sued on behalf of themselves and all others similarly situated who purchased Douglas common during the period June 21 through June 24, 1966. Essentially the complaint alleges that defendants were under a duty to disclose to the general investing public, including plaintiffs, the material inside information regarding Douglas' earnings; that defendants defrauded plaintiffs by not disclosing such information, in violation of the antifraud provisions of the securities laws; that plaintiffs would not have purchased Douglas stock if they had known of the information withheld by defendants; and that plaintiffs sustained substantial damages as a result of the acts of defendants. Plaintiffs do not claim to have purchased specific shares of Douglas stock sold by any of the selling defendants. The complaint demands damages sustained by plaintiffs and an accounting of profits realized by defendants.[9]

After the pleadings were closed and certain limited discovery proceedings had taken place, both sides brought on motions before Judge Tenney. Plaintiffs moved, pursuant to Fed.R.Civ.P. 23(c), for an order declaring that the action be maintained as a class action. Defendants moved for judgment on the pleadings on the ground that the complaint failed to state a claim upon which relief can be granted. In support of their motion, defendants contended that plaintiffs lacked standing to sue; that

---

7. The subject matter of Douglas' press release of June 24 appeared in articles in the New York Times on June 25 and in the Wall Street Journal on June 27.

8. The following is a table of prices of Douglas common stock on the NYSE during the relevant period:

| Date | Volume | High | Low | Closing Price |
|---|---|---|---|---|
| June 21 .... | 66,200 | 90 | 86 | 86¼ |
| June 22 .... | 66,500 | 90½ | 87½ | 87½ |
| June 23 .... | 261,500 | 88¾ | 77⅝ | 78¾ |
| June 24 .... | 211,100 | 77 | 74½ | 76 |
| June 25 | | SATURDAY | | |
| June 26 | | SUNDAY | | |
| June 27 .... | 121,300 | 74⅜ | 69 | 69 |
| June 28 .... | 135,300 | 70 | 66¼ | 68½ |
| June 29 .... | 102,200 | 69⅞ | 64⅛ | 64⅜ |
| June 30 .... | 180,900 | 65¼ | 61 | 63⅛ |
| July 1 .... | 100,400 | 64⅞ | 61 | 61¾ |

9. Based on substantially the same transactions alleged in the complaint in the instant action, the SEC brought administrative proceedings to determine whether certain of the defendants herein had violated the antifraud provisions of the securities laws in connection with the trading of Douglas common stock during the period June 17-June 24, 1966. The upshot of these proceedings was that the SEC accepted the offer of settlement of Merrill Lynch and its employees pursuant to which, for purposes of the administrative proceedings, they consented to findings that they had violated the antifraud provisions, including Section 10(b) and Rule 10b-5. The SEC suspended Merrill Lynch's New York institutional sales office for 15 days and imposed other administrative sanctions on certain of the individual defendants. Merrill Lynch, Pierce, Fenner & Smith, Inc., Securities Exchange Act Release No. 8459 (1968).

With respect to the selling defendants, the SEC in a separate decision, Investors Management Co., Inc., Securities Exchange Act Release No. 9267 (1971), affirmed the initial decision of the hearing examiner who, after a lengthy hearing, found that all of the selling defendants had violated the antifraud provisions, including Section 10(b) and Rule 10b-5, and ordered that they be censured.

the information defendants withheld was not material; that there was no privity between plaintiffs and defendants; that scienter was absent; and that plaintiffs had failed to allege facts sufficient to establish causation and reliance.

On December 26, 1972, Judge Tenney filed a well reasoned opinion, 353 F. Supp. 264, denying the motions by both sides.[10] In denying defendants' motion for judgment on the pleadings, the judge carefully considered but rejected each of defendants' contentions. He held in substance that Merrill Lynch and the individual defendants violated a duty which they owed to plaintiffs when these defendants disclosed material inside information to the selling defendants; that the selling defendants in turn violated a duty which they owed to plaintiffs when they sold the Douglas stock without disclosing the material inside information which had been divulged to them; that the conduct of all defendants had caused plaintiffs to sustain damages; and that accordingly the complaint stated a claim upon which relief can be granted against all defendants under Section 10(b) and Rule 10b–5.

Since there was no issue before Judge Tenney on defendants' motion for judgment on the pleadings with respect to the measure of damages to which plaintiffs would be entitled or other appropriate relief to be fashioned in the event plaintiffs were successful after trial on the merits, he made no determination on that issue.

On February 22, 1973, upon motion by defendants, Judge Tenney amended his earlier order by adding the certification[11] required by 28 U.S.C. § 1292(b) (1970) to permit appeal from an interlocutory order. On March 27, 1973, we granted leave to appeal.

## II.

Upon the basis of the foregoing summary of the facts and prior proceedings, we turn directly to the legal questions presented. They are essentially whether defendants violated Section 10(b) and Rule 10b–5 and, if so, whether they are liable in damages to plaintiffs for such violations. The district court held as a matter of pleading that both questions must be answered in the affirmative. We agree.

Our starting point is the statute and the implementing rule. Section 10(b) of the 1934 Act in relevant part makes it unlawful for any person, directly or indirectly, by the use of any facility of any national securities exchange "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission [SEC] may prescribe as necessary or appropriate in the public inter-

---

10. Plaintiffs' motion for a class action determination was denied because it was impossible on the facts presented by the pleadings to determine the parameters of the class; but leave was granted to renew the motion when sufficient facts could be presented. 353 F.Supp. at 280. Since a class action determination was not made, we are not presented with those issues discussed in Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2 Cir.), vacated and remanded, —— U.S. —— (1974).

The district court denied without comment defendants' motion insofar as it applied to plaintiffs' claims asserted under Section 15(c)(1) of the 1934 Act or Section 17(a) of the the 1933 Act, since neither side had briefed those issues. They are not before us on this appeal.

11. Judge Tenney's Section 1292(b) certification reads as follows:

"The undersigned is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, i. e., whether one who allegedly receives material non-public adverse information about a company, and thereafter sells stock in the company on a national securities exchange without disclosing said information, is civilly liable, regardless of the amount sold, to all persons who during the same period purchased securities in the same company in the open market without knowledge of the adverse information, and the Court is further of the opinion that an immediate appeal from this order may materially advance the ultimate determination of the litigation."

est or for the protection of investors."
One such prescription is Rule 10b–5
which provides in relevant part that "in
connection with the purchase or sale of
any security", it shall be unlawful for
any person, directly or indirectly, by the
use of any facility of any national secu-
rities exchange "(a) [t]o employ any de-
vice, scheme, or artifice to defraud, (b)
[t]o make any untrue statement of a
material fact or to omit to state a mate-
rial fact necessary in order to make the
statements made, in the light of the cir-
cumstances under which they were
made, not misleading, or (c) [t]o en-
gage in any act, practice, or course of
business which operates or would oper-
ate as a fraud or deceit upon any person
. . . ."

■ As we have stated time and
again, the purpose behind Section 10(b)
and Rule 10b–5 is to protect the invest-
ing public and to secure fair dealing in
the securities markets by promoting full
disclosure of inside information so that
an informed judgment can be made by
all investors who trade in such markets.
E. g., Crane Co. v. Westinghouse Air
Brake Co., 419 F.2d 787, 793 (2 Cir.
1969), cert. denied, 400 U.S. 822 (1970);
SEC v. Texas Gulf Sulphur Co., 401 F.
2d 833, 848 (2 Cir. 1968), cert. denied
sub nom. Kline v. SEC, 394 U.S. 976
(1969). We recently held in Radiation
Dynamics, Inc. v. Goldmuntz, 464 F.2d
876, 890 (2 Cir. 1972), that "[t]he es-
sential purpose of Rule 10b–5 . . . .
is to prevent corporate insiders and
their tippees from taking unfair advan-
tage of the uninformed outsiders."

■ Moreover, in applying the anti-
fraud provisions of the securities laws
to the facts of this case, it is important
to bear in mind that "Congress intended
securities legislation enacted for the pur-
pose of avoiding frauds to be construed
'not technically and restrictively, but
flexibly to effectuate its remedial pur-
poses.'" Affiliated Ute Citizens v.
United States, 406 U.S. 128, 151 (1972),
quoting from SEC v. Capital Gains Re-
search Bureau, Inc., 375 U.S. 180, 195
(1963). This policy of flexible, non-
technical construction of the securities
laws has provided the underpinning for
the results in recent cases involving spe-
cific violations of the antifraud provi-
sions of the securities laws. E. g., Su-
perintendent of Insurance v. Bankers
Life & Casualty Co., 404 U.S. 6, 12
(1971); SEC v. Glen-Arden Commodi-
ties, Inc., 493 F.2d 1027, 1033–34 (2 Cir.
1974); International Controls Corp. v.
Vesco, 490 F.2d 1334, 1345 (2 Cir. 1974).
See Chris-Craft Industries, Inc. v. Piper
Aircraft Corp., 480 F.2d 341, 357, 363
(2 Cir.), cert. denied, 414 U.S. 910
(1973).[12]

■ Here, upon the question of
whether Section 10(b) and Rule 10b–5
were violated, the critical facts—admit-
ted for purposes of this appeal—are that
Merrill Lynch, a prospective managing
underwriter of a Douglas debenture is-
sue, and some of the officers, directors
and employees of Merrill Lynch, di-
vulged to certain of its customers, the
selling defendants, material adverse in-
side information regarding Douglas'

12. While the antifraud provisions here in-
volved are Section 10(b) and Rule 10b–5,
many of the controlling principles applicable
thereto have been enunciated in cases arising
under other provisions of the 1934 Act. E. g.,
Mills v. Electric Auto-Lite Co., 396 U.S. 375
(1970) (§ 14(a)); J. I. Case Co. v. Borak,
377 U.S. 426 (1964) (§ 14(a)); Chris-Craft
Industries, Inc. v. Piper Aircraft Corp., *supra*
(§ 14(e)). The standard of causation in fact
(dispensing with any requirement of proof of
reliance as a prequisite to recovery) as stated
by Mr. Justice Harlan in *Mills*, 396 U.S. at
385, has been held applicable by the Supreme
Court to a Rule 10b–5 damage action in *Ute*,

406 U.S. at 153–54. In *Chris-Craft*, 480 F.
2d at 362, we noted that "the underlying
proscription of § 14(e) is virtually identical
to that of Rule 10b–5", and we stated that
"[i]n determining whether § 14(e) violations
were committed in the instant case, we shall
follow the principles developed under Rule
10b–5 regarding the elements of such viola-
tions." Accord, Gulf & Western Industries,
Inc. v. Great Atlantic & Pacific Tea Compa-
ny, Inc., 476 F.2d 687, 695–96 (2 Cir. 1973)
(§ 14(e)). See 1 Bromberg, Securities Law:
Fraud—SEC Rule 10b–5 § 4.7, at 86–86.1
(Supp.1972–73).

earnings; the selling defendants, without disclosing to the investing public this inside information, sold Douglas common stock on a national securities exchange; and as a result of such trading Merrill Lynch and the individual defendants received commissions and other compensation, the selling defendants minimized their losses, but the investing public comprised of uninformed outsiders, including plaintiffs, who purchased Douglas stock during the same period sustained substantial losses.

Our holding that such conduct on the part of all defendants violated Section 10(b) and Rule 10b-5 is based chiefly on our decision in SEC v. Texas Gulf Sulphur Co., *supra,* where we stated that

"anyone in possession of material inside information must either disclose it to the investing public, or, if he is disabled from disclosing it . . ., must abstain from trading in or recommending the securities concerned while such inside information remains undisclosed." 401 F.2d at 848.

Defendants argue, however, that *Texas Gulf* is inapplicable here because, first, that was an SEC injunction action and not a private damage action and, second, Rule 10b-5 does not impose upon these defendants a duty to disclose the material inside information in question to these plaintiffs who did not purchase the actual stock sold by defendants.

■ Although *Texas Gulf* was an SEC injunction action, the strong public policy considerations behind our "disclose or abstain" rule there are equally applicable here. In short, whether invoked in an SEC injunction action or in

a private damage action, "the Rule is based in policy on the justifiable expectation of the securities marketplace that all investors trading on impersonal exchanges have relatively equal access to material information . . . ." SEC v. Texas Gulf Sulphur Co., *supra,* 401 F.2d at 848.[13] See Crane Co. v. Westinghouse Air Brake Co., *supra,* 419 F.2d at 796. Since one of the primary goals of the antifraud provisions of the securities laws would be frustrated if our "disclose or abstain" rule enunciated in *Texas Gulf* were to be limited to SEC injunction actions and held inapplicable to private damage actions, we reject such ground of distinction.

■ We also reject defendants' second asserted ground for distinguishing *Texas Gulf*—that our "disclose or abstain" rule is not applicable here because the only duty owed by defendants was to purchasers of the specific shares of Douglas stock sold by defendants and the transactions here involved were not face-to-face sales to plaintiffs. This argument totally misconstrues our *Texas Gulf* rule. 401 F.2d at 848. It also ignores the fact that these transactions occurred on an anonymous national securities exchange where as a practical matter it would be impossible to identify a particular defendant's sale with a particular plaintiff's purchase. And it would make a mockery of the "disclose or abstain" rule if we were to permit the fortuitous matching of buy and sell orders to determine whether a duty to disclose had been violated. See Painter, Inside Information: Growing Pains For The Development Of Federal Corporation Law Under Rule 10b-5, 65 Colum.L.Rev. 1361, 1372, 1377–78 (1965).[14] On this

---

13. We further noted in *Texas Gulf* the Congressional purpose to be implemented by Rule 10b-5:

"The core of Rule 10b-5 is the implementation of the Congressional purpose that all investors should have equal access to the rewards of participation in securities transactions. It was the intent of Congress that all members of the investing public should be subject to identical market risks

. . . . [And] inequities based upon unequal access to knowledge should not be shrugged off as inevitable in our way of life, or, in view of the congressional concern in the area, remain uncorrected." 401 F.2d at 851–52.

14. As the author recognizes, "Since in any active market disclosure to a particular individual is not feasible, the duty to disclose, if

very point, we stated in Radiation Dynamics, Inc. v. Goldmuntz, *supra*, that our "disclose or abstain" rule enunciated in *Texas Gulf* "applies whether the securities are traded on a public stock exchange or sold through private placement." 464 F.2d at 887. To hold that Section 10(b) and Rule 10b–5 impose a duty to disclose material inside information only in face-to-face transactions or to the actual purchasers or sellers on an anonymous public stock exchange, would be to frustrate a major purpose of the antifraud provisions of the securities laws: to insure the integrity and efficiency of the securities markets. Chris-Craft Industries, Inc. v. Piper Aircraft Corp., *supra*, 480 F.2d at 357. We decline defendants' invitation to sanction a result which Section 10(b) and Rule 10b–5 clearly were intended to foreclose. See Astor v. Texas Gulf Sulphur Co., 306 F.Supp. 1333, 1340–42 (S.D.N.Y.1969). We hold that defendants owed a duty—for the breach of which they may be held liable in this private action for damages—not only to the purchasers of the actual shares sold by defendants (in the unlikely event they can be identified) but to all persons who during the same period purchased Douglas stock in the open market without knowledge of the material inside information which was in the possession of defendants.

We find untenable the contentions of the respective defendants that, upon the issue of whether they violated the antifraud provisions of the securities laws, a distinction should be drawn between their roles as non-trading "tippers" and trading "tippees".

With respect to Merrill Lynch and the individual defendants (the non-trading "tippers"), their divulging of confidential material inside information to their customers who sold Douglas stock on the basis of such information clearly violated Section 10(b) and Rule 10b–5. In

SEC v. Texas Gulf Sulphur Co., *supra*, 401 F.2d at 852, 856, we held that two "tippers" violated the antifraud provisions of the securities laws by disclosing material inside information to individuals who subsequently entered into transactions on the basis of that information, and we remanded to the district court for determination of an appropriate remedy. Upon remand, the district court held one of these "tippers" liable for "tipping" and awarded appropriate relief. SEC v. Texas Gulf Sulphur Co., 312 F.Supp. 77, 95 (S.D.N.Y.1970), modified on other grounds, 446 F.2d 1301, 1307–08 (2 Cir.), cert. denied, 404 U.S. 1005 (1971). We find *Texas Gulf* controlling with respect to the liability of the non-trading "tippers" here.

With respect to the selling defendants (the trading "tippees"), *Texas Gulf* strongly suggests that the same duty to "abstain or disclose" should be imposed upon them. Although the issue of "tippee" liability was not squarely before us in *Texas Gulf*, we did say:

"As Darke's 'tippees' are not defendants in this action, we need not decide whether, if they acted with actual or constructive knowledge that the material information was undisclosed, their conduct is as equally violative of the Rule as the conduct of their insider source, though we note that it certainly could be equally reprehensible." 401 F.2d at 852–53.

In Ross v. Licht, 263 F.Supp. 395, 410 (S.D.N.Y.1967), the court observed, "If [defendants] were not insiders, they would seem to have been 'tippees' . . . and subject to the same duty as insiders." See Radiation Dynamics, Inc. v. Goldmuntz, *supra*, 464 F.2d at 887, 890; Cady Roberts & Co., 40 S.E.C. 907, 912–13 (1961). Cf. Kuehnert v. Texstar Corp., 412 F.2d 700, 702–05 (5 Cir. 1969). We are not persuaded by the selling defendants' argument that as tippees they were not able to make ef-

---

such a duty exists, must be owed to all members of that ill-defined class of stockholders who, with the benefit of inside information,

would alter their intention to [buy]." Painter, 65 Colum.L.Rev. at 1378.

fective public disclosure of information about a company with which they were not associated; for the duty imposed is not a naked one to disclose, but a duty to abstain from trading unless they do disclose. Since upon the admitted facts before us the selling defendants knew or should have known of the confidential corporate source of the revised earnings information and they knew of its non-public nature, they were under a duty not to trade in Douglas stock without publicly disclosing such information.

In short, for the reasons set forth above, we hold that all defendants violated Section 10(b) and Rule 10b–5.

### III.

■ We turn next to the remaining major legal question presented: assuming that defendants did violate the anti-fraud provisions of the securities laws by trading in or recommending trading in Douglas common stock (as we have held above), whether they are liable in a private action for damages to plaintiffs who during the same period purchased Douglas stock in the open market without knowledge of the material inside information which was in the possession of defendants.

The essential argument of defendants on this question is that, even if they did violate Section 10(b) and Rule 10b–5, their conduct did not "cause" damage to plaintiffs;[15] that it was Douglas' precarious financial condition, not defendants' securities law violations, which precipitated the sudden, substantial drop in the market price of Douglas stock and hence the losses sustained by plaintiffs; that, since plaintiffs had no prior or contemporaneous knowledge of defend-

ants' actions, they would have purchased Douglas stock regardless of defendants' securities law violations; and that, since defendants' sales were unrelated to plaintiffs' purchases and all transactions took place on anonymous public stock exchanges,[16] there is lacking the requisite connection between defendants' alleged violations and the alleged losses sustained by plaintiffs.

The short, and we believe conclusive, answer to defendants' assertion that their conduct did not "cause" damage to plaintiffs is the "causation in fact" holding by the Supreme Court in Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–54 (1972), upon the authority of which we conclude that the requisite element of causation in fact has been established here by the uncontroverted facts that defendants traded in or recommended trading in Douglas stock without disclosing material inside information which plaintiffs as reasonable investors might have considered important in making their decision to purchase Douglas stock.

In order more fully to deal with the arguments which have been vigorously urged upon us by defendants' counsel, however, we believe it may be helpful to back up a bit from our conclusion based on *Affiliated Ute* and particularly to indicate briefly the decisional law regarding the requisite element of causation that preceded the Supreme Court's opinion in that case.

We consistently have held that causation is a necessary element of a private action for damages under Rule 10b–5. E. g., Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1172 (2 Cir. 1970); Crane Co. v. Westinghouse Air Brake

---

15. While defendants urged upon the district court the absence of other elements of a Rule 10b–5 cause of action—e. g., standing, materiality and scienter, 353 F.Supp. at 270–73, their chief emphasis on this appeal is directed at the asserted absence of causation and reliance and the absence of privity between plaintiffs and defendants.

16. The similarity between certain arguments made here and some discussed above under part II of this opinion is recognized. The issue here is the existence of the essential elements of a private action for damages—whether these plaintiffs may recover damages—while the issue under part II was whether violations of Section 10(b) and Rule 10b–5 had been established. We shall assume familiarity here with our discussion of similar arguments above.

Co., 419 F.2d 787, 797 (2 Cir. 1969), cert. denied, 400 U.S. 822 (1970). Indeed, we have refused "to facilitate outsiders' proof of insiders' fraud" by "reading out of [Rule 10b–5] so basic an element of tort law as the principle of causation in fact." List v. Fashion Park, Inc., 340 F. 2d 457, 463 (2 Cir.), cert. denied, 382 U.S. 811 (1965). This is consistent with "the basic concept that causation must be proved else defendants could be held liable to all the world." Globus v. Law Research Service, Inc., 418 F.2d 1276, 1292 (2 Cir. 1969), cert. denied, 397 U.S. 913 (1970). And we have recognized that the aim of Rule 10b–5 "is to qualify, as between insiders and outsiders, the doctrine of *caveat emptor*—not to establish a scheme of investors' insurance." List v. Fashion Park, Inc., *supra*, 340 F.2d at 463.

■ As one branch of their absence of causation argument, defendants contend that there was no privity between themselves and plaintiffs. We hold here, as we have held before, that privity between plaintiffs and defendants is not a requisite element of a Rule 10b–5 cause of action for damages. For example, we have upheld Rule 10b–5 claims for relief where there have been no direct transactions between plaintiffs and defendants. Crane Co. v. Westinghouse Air Brake Co., *supra*, 419 F.2d at 796–98; Heit v. Weitzen, 402 F.2d 909, 913 (2 Cir. 1968), cert. denied, 395 U.S. 903 (1969). See Astor v. Texas Gulf Sulphur Co., 306 F.Supp. 1333, 1341–42 (S.D.N.Y.1969). As the Tenth Circuit stated in Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90, 101 (10 Cir.), cert. denied, 404 U.S. 1004 (1971), "[p]erhaps the first step is to realize that the common law requirement of privity has all but vanished from 10b–5 proceedings while the distinguishable 'connection' element is retained." And we recognized in Globus v. Law Research Service, Inc., *supra*, 418 F.2d at 1291, that "[b]efore there may be a violation of the securities acts there need not be present all of the same elements essential to a common law fraud. . . ." See Ruder, Texas Gulf Sulphur—The Second Round: Privity and State of Mind in Rule 10b–5 Purchase and Sale Cases, 63 Nw.U.L.Rev. 423, 432–33 (1968). In short, causation as an element of a Rule 10b–5 cause of action can be established notwithstanding lack of privity.

■ As a further refinement of their absence of casuation argument, defendants contend that, even if privity between plaintiffs and defendants is not required, it is still necessary to show a "connection" between defendants' nondisclosure conduct and plaintiffs' purchase of Douglas stock—in the sense that the former induced the latter—before a Rule 10b–5 claim can be established. It is true that prior to the Supreme Court decision in *Affiliated Ute* the so-called connection requirement was stated in terms of causation and reliance. For example, we have noted that the reason for the requirement of reliance "is to certify that the conduct of the defendant actually caused the plaintiff's injury", List v. Fashion Park, Inc., *supra*, 340 F.2d at 462, and we have held that "[t]o the extent that reliance is necessary for a finding of a 10b–5 violation in a non-disclosure case . . ., the test is properly one of tort 'causation in fact.'" Chasins v. Smith, Barney & Co., *supra*, 438 F.2d at 1172. See Crane Co. v. Westinghouse Air Brake Co., *supra*, 419 F.2d at 797. Cf. SEC v. Texas Gulf Sulphur Co., *supra*, 401 F.2d at 860. While the concepts of reliance and causation have been used interchangeably in the context of a Rule 10b–5 claim, the proper test to determine whether causation in fact has been established in a non-disclosure case is "whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact." List v. Fashion Park, Inc., *supra*, 340 F.2d at 463. See Chasins v. Smith, Barney & Co., *supra*, 438 F.2d at 1172. Cf. Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 373–75 (2 Cir.), cert. denied, 414 U.S. 910 (1973).

Even on the basis of the pre-*Affiliated Ute* decisions discussed above, therefore, we would reject defendants' essential causation argument, namely, that, absent an allegation that plaintiffs' purchase of Douglas stock was induced by defendants' non-disclosure of material inside information, the requisite element of causation is lacking. On the contrary, the Rule 10b–5 causation in fact requirement is satisfied by plaintiffs' allegation that they would not have purchased Douglas stock if they had known of the information withheld by defendants.

As must be apparent from our discussion above, we believe that the Supreme Court's decision in *Affiliated Ute*—which we regard as controlling on the issue of causation in the instant case—is a logical sequel to our prior decisions in such cases as *List, Heit, Globus, Crane,* and *Chasins*. Moreover, *Affiliated Ute* specifically applied to a Rule 10b–5 damage action the causation in fact standard enunciated by Mr. Justice Harlan in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385 (1970), where, in a case involving a cognate provision of the 1934 Act (Section 14(a)), the Court approved dispensing with any requirement of proof of reliance as a prerequisite to recovery in a private damage action. See note 12, *supra.*

In *Affiliated Ute,* members of a large class of holders of stock deposited in a bank alleged that two employees of the bank in arranging for sales of this stock had failed to disclose to plaintiffs facts regarding the bank's and the employees' positions as market makers and facts regarding the true value of the stock, in violation of Rule 10b–5. The Supreme Court, in reversing the Court of Appeals which had held that there could be no recovery under Section 10(b) and Rule 10b–5 without a showing of reliance, stated:

"Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. *All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. . . .* This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." 406 U.S. at 153–54. (citations omitted) (emphasis added).

As applied to the instant case, this holding in *Affiliated Ute* surely warrants our conclusion that the requisite element of causation in fact has been established by the admitted withholding by defendants of material inside information which they were under an obligation to disclose, such information being clearly material in the sense that plaintiffs as reasonable investors might have considered it important in making their decision to purchase Douglas stock.

Defendants argue that the *Affiliated Ute* rule of causation in fact should be confined to the facts of that case which involved face-to-face transactions. We disagree. That rule is dependent not upon the character of the transaction—face-to-face versus national securities exchange—but rather upon whether the defendant is obligated to disclose the inside information. Here, as we have held above, defendants were under a duty to the investing public, including plaintiffs, not to trade in or to recommend trading in Douglas stock without publicly disclosing the revised earnings information which was in their possession. They breached that duty. Causation in fact therefore has been established.

Our holding that causation in fact has been established despite the fact that all transactions took place on a national securities exchange is consistent with the underlying purpose of Section 10(b) and Rule 10b–5 "to prevent inequitable and unfair practices and to insure fairness in securities transactions generally, whether conducted face-to-face, over the counter, or on the exchanges. . . . The Act and the Rule apply to the transactions here, all of which were consummated on exchanges." SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 847–48

(2 Cir. 1968), cert. denied sub nom. Kline v. SEC, 394 U.S. 976 (1969) (citations omitted).[17]

For the reasons set forth above, we hold that defendants are liable in this private action for damages to plaintiffs who, during the same period that defendants traded in or recommended trading in Douglas common stock, purchased Douglas stock in the open market without knowledge of the material inside information which was in the possession of defendants.[18]

### IV.

Finally, having held that all defendants violated Section 10(b) and Rule 10b–5 and that they are liable to plaintiffs in this private action for damages, we leave to the district court the appropriate form of relief to be granted, including the proper measure of damages. This comports with the procedure followed in other cases where appellate courts have determined issues of liability for violations of the securities laws. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386–89 (1970); J. I. Case v. Borak, 377 U.S. 426, 433–35 (1964); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 379–80 (2 Cir.), cert. denied, 414 U.S. 910 (1973); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 803–04 (2 Cir. 1969), cert. denied, 400 U.S. 822 (1970).

In the instant case there are especially compelling reasons for following this procedure. Since the appeal comes to us from an interlocutory order denying defendants' motion for judgment on the pleadings, there was no issue before the district court and of course no adjudication below on the form of relief to be granted. Among the questions to be determined which will have an important bearing on the form of relief is whether the action is to be maintained as a class action and, if so, the parameters of the

17. Following our remand in *Texas Gulf, supra,* 401 F.2d at 864, the district court ruled on motions for summary judgment by certain defendants in a related shareholders' action. Astor v. Texas Gulf Sulphur Co., 306 F.Supp. 1333 (S.D.N.Y.1969). Shareholders of Texas Gulf had brought a Rule 10b–5 action against defendants who had purchased Texas Gulf stock on the basis of material inside information during the same period that plaintiffs had sold. Plaintiffs alleged that they would not have sold their stock had they known of the undisclosed information. No privity existed between plaintiff-sellers and defendant-buyers. Defendants had made no affirmative misrepresentations. The transactions were executed on an essentially anonymous market. 306 F.Supp. at 1341. On the basis of these facts, the court, applying the *List* test, found that plaintiffs' complaint stated a claim for relief under Rule 10b–5 and accordingly denied defendants' motions for summary judgment. *Id.* at 1342.

18. Defendants argue that, rather than the instant private action for damages, there are adequate sanctions against those who violate Section 10(b) and Rule 10b–5 in the form of administrative and injunctive proceedings which can be brought by the SEC. See note 9, *supra.* The short answer is that such proceedings and the private action for damages are not mutually exclusive remedies. As we recently stated in Chris-Craft Industries, Inc. v. Piper Aircraft Corp., *supra,* 480 F.2d at 356:

"the Supreme Court, as well as other federal courts including our own, have recognized that vigorous enforcement of the federal securities laws, particularly the antifraud provisions, can be accomplished effectively only when implemented by private damage actions. In J. I. Case Co. v. Borak, 377 U.S. 426 (1964), the Supreme Court emphasized that private actions provide 'a necessary supplement to Commission action' and that 'the possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement' of the securities laws. 377 U.S. at 432. See Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2 Cir. 1951); Speed v. Transamerica Corp., 235 F. 2d 369 (3 Cir. 1956)."

In like vein, defendants contend that the recovery of illegal profits resulting from an insider's misuse of corporate information should be left to derivative stockholders actions as in Schein v. Chasen, 478 F.2d 817 (2 Cir. 1973), remanded on other grounds sub nom. Lehman Bros. v. Schein, —— U.S. —— (1974), and Diamond v. Oreamuno, 24 N.Y.2d 494, 248 N.E.2d 910, 301 N.Y.S.2d 78 (1969). What we said above regarding the role of the private action for damages in the overall program for vigorous enforcement of the federal securities laws applies with equal force here. Moreover, derivative actions for such relief are not uniformly available in all states.

class; as to this, the district court understandably was unable to make a determination on the facts presented by the pleadings. 353 F.Supp. at 280. See note 10, *supra*. Another closely related question bearing upon the relief to be granted as to which the district court had insufficient data upon which to make a determination, 353 F.Supp. at 279–80, is just when Douglas' news release regarding its revised earnings forecast on the morning of June 24, 1966 became effectively disseminated, especially in the light of SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 854 n. 18 (2 Cir. 1968), cert. denied sub nom. Kline v. SEC, 394 U.S. 976 (1969). Other questions bearing upon the appropriate form of relief which must await trial include the extent of the selling defendants' trading in Douglas stock, whether such trading effectively impaired the integrity of the market, what compensation if any was paid by the selling defendants to Merrill Lynch for the inside information, what profits or other benefits were realized by defendants, what expenses were incurred and what losses were sustained by plaintiffs, and what should be the difference, if any, in the extent of liability imposed on the individual defendants and the selling defendants, respectively. Moreover, we do not foreclose the possibility that an analysis by the district court of the nature and character of the Rule 10b–5 violations committed may require limiting the extent of liability imposed on either class of defendants.

In leaving to the district court the fashioning of appropriate relief, including the proper measure of damages, we are not unmindful of the arguments pressed upon us by all defendants that the resulting judgment for damages may be very substantial in amount—in the words of defendants' counsel, a "Draconian liability". This is an additional reason for leaving to the district court the appropriate form of relief to be granted—a determination that can best be made after an evidentiary hearing and on the basis of appropriate findings of fact.

In short, we decide today only those legal questions properly before us on this appeal from the interlocutory order denying defendants' motion for judgment on the pleadings. We leave all other issues to the district court, including the fashioning of appropriate relief.

Affirmed.