Irving **BACKMAN, et al., Plaintiffs,**

v.

**POLAROID CORPORATION, et al., Defendants.**

Civ. A. Nos. 79–1031–MC, 79–1284–MC and 79–1285–MC.

United States District Court, D. Massachusetts.

June 8, 1982.

---

Thomas G. Shapiro, Shapiro & Grace, Boston, Mass., B. L. Knapp, Lowey, Dannenberg & Knapp, P. C., New York City, for plaintiffs in No. 79–1031–MC.

Christopher Brady, James E. Tolan, Olwine, Connelly, Chase, O'Connell & Weyher, New York City, Francis Fox, Bingham, Dana & Gould, Boston, Mass., for defendant Polaroid.

A. Van C. Lanckton, Boston, Mass., for defendant Polaroid in Nos. 79–1031–MC, 79–1285–MC.

Laurence S. Fordham, Foley, Hoag & Eliot, Boston, Mass., for defendants Julius Silver and Jurodin Fund Inc.

Samuel Hoar, Goodwin, Procter & Hoar, Boston, Mass., for defendants Rowland Foundation and Edwin Land.

Carol Goodman, Boston, Mass., for defendants Rowland Foundation and Edwin Land in No. 79–1031–MC.

Arthur N. Abbey, New York City, for plaintiff in No. 79–1285–MC.

Joseph D. Steinfield, Hill & Barlow, Boston, Mass., for plaintiff in Nos. 79–1284–MC, 79–1285–MC.

Davis, Polk & Wardwell, New York City, for defendant Polaroid in Nos. 79–1284–MC, 79–1285–MC.

Kreindler & Kreindler, New York City, for plaintiff in No. 79–1284–MC.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

In this consolidation of three purported class actions, the plaintiffs allege that the defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b–5, 17 C.F.R. 240.10b–5. The plaintiffs are purchasers of Polaroid stock and Polaroid call options between January 11, 1979 and February 22, 1979. The defendants are the Polaroid Corporation; Dr. Edwin Land, its founder; Julius Silver, an officer and director of Polaroid since 1938; the Rowland Foundation, a charitable foundation controlled by Dr. Land; and the Jurodin Fund, a charitable foundation controlled by Mr. Silver.

In Count I of the complaint, the plaintiffs allege that on January 11, 1979, the Rowland Foundation, acting upon undisclosed inside information concerning Polaroid's financial status and upon Dr. Land's instructions, sold 300,000 shares of Polaroid common stock on the open market. Similarly, in Count I, the plaintiffs allege that on January 18, 1979, the Jurodin Fund sold 19,600 shares of Polaroid common stock, acting upon undisclosed inside information concerning Polaroid and upon Mr. Silver's instructions.

Count II is brought solely against Polaroid and alleges that Polaroid failed to disclose in a timely fashion certain adverse financial information about its operations and that such failure constituted fraud on the investing public.

These actions came on to be heard on a motion to dismiss, or in the alternative for summary judgment, made by the defendants Jurodin and Silver, and on the plaintiffs' motion for class action determination.

### I. *Motion to Dismiss*

The pertinent facts relative to the Jurodin sale and the various purchases by the plaintiffs are:

The Jurodin Fund sold 19,000 shares of Polaroid common on the open market on January 18, 1979. Neither Silver nor Jurodin sold call options on Polaroid stock.

The plaintiffs' purchases of Polaroid common and the dates of those purchases were:

1) Group Service purchased 2,500 shares January 11, 1979;

2) Seiden & de Cuevas purchased 1,000 shares January 11, 1979;

3) Progressive Insurance made two purchases: one of 4,500 shares January 11, 1979, and one of 1,500 shares January 16, 1979;

4) Backman purchased 1,500 shares January 16, 1979; and

5) Model purchased 500 shares January 29, 1979.

Dr. Anderson bought 70 call option contracts on various days from January 17 through February 16, 1979. On January 22, 1979, he exercised 10 of those options and received 5,000 shares of Polaroid common stock.

Silver and Jurodin argue for dismissal on the grounds that whatever test is applied, those plaintiffs have no standing to bring these actions. While acknowledging that the First Circuit has not addressed the issue of the scope of Rule 10b–5 liability for insider trading, Silver and Jurodin contend that under the standards adopted by either the Sixth Circuit or the Second, the plaintiffs lack standing to assert the claims which they make here.

In *Fridrich v. Bradford*, 542 F.2d 307 (6th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 769 (1977), the Sixth Circuit restricted the scope of defendants' liability in actions alleging insider trading. The court held that the only open market purchasers who could sue for insider trading violations were those who could show that they had purchased directly from the insider or that their decisions to purchase were affected by the insider trading.

The Second Circuit in *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88 (2d Cir. 1981), announced a "contemporaneous trading" standard. In that case, the plaintiff purchased stock one month after sales of stock by insiders. The court held:

> Any duty of disclosure is owed only to those investors trading contemporaneously with the insider; non-contemporaneous traders do not require the protection of the "disclose or abstain" rule because they do not suffer the disadvantage of trading with someone who has superior access to information.

*Id.* at 94–95.

The privity requirement announced by the Sixth Circuit in *Fridrich* places a burden upon plaintiffs in insider trading cases which is nearly impossible to meet. As the Second Circuit has stated,

> ... [T]hese transactions occurred on an anonymous national securities exchange where as a practical matter it would be impossible to identify a particular defendant's sale with a particular plaintiff's purchase. And it would make a mockery of the "disclose or abstain" rule if we were to permit the fortuitous matching of buy and sell orders to determine whether a duty to disclose had been violated.

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 236 (2d Cir. 1974).

The Sixth Circuit's interpretation in *Fridrich* of the causation-in-fact requirement is too restrictive. My interpretation of *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), is the same as that of the Second Circuit in *Shapiro*:

> As applied to the instant case, this holding in *Affiliated Ute* surely warrants our conclusion that the requisite element of causation in fact has been established by the admitted withholding by defendants of material inside information which they were under an obligation to disclose, such information being clearly material in the sense that plaintiffs as reasonable investors might have considered it important in making their decision to purchase Douglas stock.

Defendants argue that the *Affiliated Ute* rule of causation in fact should be confined to the facts of that case which involved face-to-face transactions. We disagree. That rule is dependent not upon the character of the transaction—face-to-face versus national securities exchange—but rather upon whether the defendant is obligated to disclose the inside information. Here, as we have held above, defendants were under a duty to the investing public, including plaintiffs, not to trade in or to recommend trading in Douglas stock without publicly disclosing the revised earnings information which was in their possession. They breached that duty. Causation in fact therefore has been established.

Our holding that causation in fact has been established despite the fact that all transactions took place on a national securities exchange is consistent with the underlying purpose of Section 10(b) and Rule 10b–5 "to prevent inequitable and unfair practices and to insure fairness in securities transactions generally, whether conducted face-to-face, over the counter, or on the exchanges."

*Shapiro*, 495 F.2d at 240 (quoting *S. E. C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 847 (2d Cir. 1968).

For these reasons, I decline to adopt the standards promulgated by the Sixth Circuit in *Fridrich*.

■ I do feel, however, that logic calls for a restriction on the scope of liability of insiders[1] who trade in an open market. I agree with Judge Celebrezze's analysis in his concurring opinion in *Fridrich* that, "Since the mechanics of the marketplace make it virtually impossible to identify the actual investors with whom an insider is trading, the duty of disclosure is owned [sic]

to investors as a class who trade on the market during the period of insider trading." 542 F.2d at 324.

Limiting potential recovery to only those persons who traded during a period of insider trading is appropriate since,

> Non-contemporaneous traders do not require the special protection of the "disclose or abstain" rule because they do not suffer the disadvantage of trading with someone who has superior access to information. Parties on both sides of the transaction have equal access to information... Neither an insider's trading when he is not in possession of material inside information, nor the decision to abstain from trading when he does possess such information, gives rise to a duty of disclosure. That duty arises only when necessary to equalize the information available to outside investors who are actively trading with an insider who is privy to undisclosed material facts. When the insider ceases trading, the informational imbalance ends and the market returns to its normal state.

*Id.*, at 326–327.

■ In this case, no named plaintiff purchased Polaroid common stock on January 18, 1979. Four of the named plaintiffs purchased before that date; Anderson exercised a call option to purchase Polaroid stock on January 22, 1979, and Model purchased its shares on January 29, 1979. Notwithstanding plaintiffs' allegations of concerted action, Jurodin cannot be liable for purchases which occurred before it sold its 19,600 shares, allegedly upon inside information; neither can Jurodin be held liable for whatever acts Silver allegedly performed in furtherance of the Rowland sale. For those reasons, I will dismiss plaintiffs' claims against Jurodin which arose before January 18, 1979.

---

1. This case is more typical of an insider trading case than a tipping case. As Judge Celebrezze pointed out, "Tipping, by its very nature, is a more open-ended violation than that of the insider who enters the market, trades on his own account and withdraws." *Fridrich v. Bradford*, 542 F.2d 307, 327, n.12 (6th Cir. 1976). This case does not involve tipping on a mass scale which might require a different result than that which I reach in this part of this memorandum and order. *See id.* at 327; *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, [1976 Transfer Binder] Sec.L.Rep. (CCH) ¶ 95,377 at 98,874 (S.D.N.Y. Dec. 9, 1975).

The purchases of Polaroid stock by Anderson 4 days (2 trading days) after the Jurodin sale, and by Model 11 days (7 trading days) after the sale are outside of the period of insider trading; therefore, those plaintiffs lack standing to sue on their claims against Silver and Jurodin. The motions to dismiss must be allowed as to the claims regarding the *stock* purchases of Anderson and Model.

I will not dismiss any claims against Silver except those noted in the preceding paragraph. I feel that the complaint can be read fairly to assert Silver's involvement in the January 11, 1979 sale by Rowland.

Finally, I deny the motion to dismiss insofar as it relates to the claims of Dr. Anderson arising out of his purchases of call options on or before January 18, 1979. The fact that Dr. Anderson purchased call options and not shares of stock does not require that his claims be dismissed. Call options are "securities" within the meaning of Section 10(b) and Rule 10b–5. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 751, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975). Both § 10(b) and Rule 10b–5 apply to "any person" who engages in fraudulent or deceptive activities in connection with a sale or purchase of a security. *See O'Connor & Assoc. v. Dean Witter Reynolds*, 529 F.Supp. 1179 (S.D.N.Y.1981); *Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F.Supp. 807 (S.D.N.Y.1978). Although Dr. Anderson may have difficulty in establishing that he was damaged by the trading by Silver and Jurodin, he does state a claim upon which relief can be granted and the motion to dismiss, as against Anderson, must be denied as to claims relating to purchases of call options on or before January 18, 1979, and allowed as to claims arising out of purchases of call options after that date.

II. *Class Certification Motion*

Due to my decision in Part I, *supra*, limiting the proposed class period to that of January 11, 1979 to January 18, 1979, inclusive, I will require further information from the plaintiffs regarding the numerosity of the potential class. Plaintiffs should submit such additional information within 30 days. This is not to intimate that any decision has been reached as to the other requirements for class certification; I simply desire further information before reaching a decision on the motion for class action determination.