**Donald I. LAVENTHALL, Appellant,**

v.

**GENERAL DYNAMICS CORPORATION, Appellee.**

**No. 81–1986.**

United States Court of Appeals, Eighth Circuit.

Submitted March 9, 1982.

Decided April 6, 1983.

---

Shepherd, Sandberg & Phoenix, John C. Shepherd, Jonathan Ries, Richard L. Prebil, St. Louis, Mo., for appellee; Jenner & Block, Clarold L. Britton, Laura A. Kaster, Chicago, Ill., of counsel.

Greenfield, Davidson, Voorhees, & Hamlett, John L. Davidson, Jr., Thomas H. Pollihan, St. Louis, Mo., for appellant; Pomerantz, Levy, Haudek & Block, Robert B. Block, Bruce G. Stumpf, New York City, of counsel.

Before LAY, Chief Judge, and ROSS and McMILLLIAN, Circuit Judges.

LAY, Chief Judge.

This is an appeal from the summary dismissal of plaintiff's complaint in an action alleging violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and rule 10b–5 of the Securities and Exchange Commission (SEC), 17 C.F.R. § 240.10b–5 (1982). Donald Laventhall was the purchaser of call options that

gave him the right to purchase 1000 shares of common stock in General Dynamics Corporation from October 13, 1978, to February 17, 1979. Without disclosing a pending declaration of a cash dividend, General Dynamics purchased 157,500 shares of its own common stock on the open market in December 1978. On the afternoon of January 4, 1979, General Dynamics declared a cash dividend and a stock split.

Laventhall filed a class action on behalf of all persons who sold call options or other securities of General Dynamics between December 6, 1978, and January 4, 1979. He claimed that General Dynamics improperly traded stock on undisclosed material inside information.

The district court, the Honorable Clyde S. Cahill presiding, ruled that General Dynamics had no duty to disclose any information to Laventhall because the corporation did not have a fiduciary or similar relationship of trust to an options holder, and the court dismissed the complaint as to call options holders. *Laventhall v. General Dynamics Corp.*, No. 80–0305–C(5) (E.D.Mo. April 6, 1981). Laventhall thereafter requested the court to direct notice to surviving class members, including stockholders, under rules 23(d)(2) and 23(e) of the Federal Rules of Civil Procedure. The district court refused to do so on the grounds that rule 23(e) applies only to voluntary dismissals and that notice was not justified under rule 23(d)(2) because surviving class members would not be prejudiced by dismissal of the action. The court additionally found that Laventhall was no longer an adequate class representative under rule 23(a)(3). *Laventhall v. General Dynamics Corp.*, 91 F.R.D. 208 (E.D.Mo.1981). Upon dismissal of the complaint, this appeal followed. We affirm the judgment of dismissal.

*Facts.*

Prior to the January 4, 1979, announcement General Dynamics had not declared a cash dividend on common stock since 1971.[1] Beginning in 1978 General Dynamics began to take steps in preparation for declaring a cash dividend in 1979. Between December 6 and December 29, 1978, without disclosing that a payment of a dividend was being considered, the corporation purchased 157,500 shares of its common stock on the open market. The shares were allegedly purchased for its management incentive stock program.[2] It was not until January 4, 1979, that General Dynamics disclosed its intention to declare a dividend. On that date the General Dynamics board unanimously approved the dividend plan whereby a $3 dividend would be paid for each pre-split common share and at the same time there would be a 2½ for 1 stock split. Thereafter, the common stock went from 81⅛ to 89¾ on January 5, 1979, the day after the announcement.

The plaintiff, Donald Laventhall, purchased ten call options on the Chicago Board of Options Exchange issued by the Options Clearing Corporation on October 13, 1978, at a total price of $5500. These options gave Laventhall the right to purchase 1000 shares of General Dynamics Corporation common stock at $90 per share until February 17, 1979. Laventhall never

---

**1.** According to pleadings filed in an action brought by the SEC, *SEC v. General Dynamics Corp.*, Civ. No. 80–0279–C(2) (E.D.Mo. Feb. 27, 1980), the alleged reason no earlier dividends had been declared was that General Dynamics had to make large cash outlays to construct nuclear submarines pursuant to a disputed contract with the Navy. This dispute was settled in September-October 1978; thereafter it is alleged steps were taken by General Dynamics to declare a dividend on its common stock.

**2.** On February 27, 1980, the SEC and General Dynamics entered into a consent decree, Civ. No. 80–0279–C(2) (E.D.Mo. Feb. 27, 1980), in which General Dynamics denied any wrongdoing concerning the purchase of the securities and issuance of the dividend; nonetheless General Dynamics, based upon allegations of the SEC complaint, agreed to maintain in the future certain policies and procedures regarding disclosure of material information with respect to purchases of securities. It is significant to point out that what is at stake in the present lawsuit, although not made clear by plaintiff's complaint, is that underlying the alleged undisclosed declaration of dividend is the SEC allegation that General Dynamics' tax department undertook an analysis that the projected dividend *could* be construed as a nontaxable return of capital instead of a taxable dividend.

exercised his options and sold them on the morning of January 4, 1979, for $1875.

*Discussion.*

The fundamental issue relates to Laventhall's standing as an options holder to bring suit against a corporation trading solely in common stock. The district court found he had no standing. Although we find the issue not free from doubt, we affirm the judgment of dismissal of the district court.

Section 10(b) of the Securities Exchange Act of 1934 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1976).

Rule 10b–5, promulgated under section 10(b), provides in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

. . . .

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1982).

An option is a security as defined in section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10) (1976). The term "security" is defined to include a "warrant or right to subscribe to or purchase [stock]." *Id.; see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750–51, 95 S.Ct. 1917, 1932–33, 44 L.Ed.2d 539 (1975); 2 L. Loss, *Securities Regulation* 1075 (2d ed. 1961).

Section 10(b) and rule 10b–5 have been applied to prohibit corporate insiders from trading without disclosing material, inside information.[3] In *In re Cady, Roberts & Co.,* 40 S.E.C. 907, 912 (1961), the Commission ruled that corporate insiders must either disclose material inside information known to them or refrain from trading in the shares of the corporation. *See SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 848 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

Laventhall argues that the corporation's failure to disclose its dividend plans before purchasing its common stock was a violation of this duty to abstain or disclose. He urges that General Dynamics had an obligation to disclose the information to all investors or, alternatively, that he was injured by the corporation's violation of its duty to disclose the information to its shareholders.

The options at issue were issued by Options Clearing Corporation. The record contains several documents explaining options trading. An option to purchase (a call option) represents a contract with a private brokerage firm to purchase stock in the future at a specified price. Options are bought because they offer an investor a potential profit from a limited dollar exposure; on the other hand, trading in options can be far more speculative than the purchase of common stock or other securities. Even though the stock price may increase, options may expire worthless. If the option is not exercised, that is, the contract not performed, or if the option itself is not sold before expiration, the buyer may lose its entire purchase price. It is common knowledge that the risk in options trading is

---

**3.** The Supreme Court, as has this court, recognized an implied private remedy for violation of section 10(b) and rule 10b–5. *See Herman & MacLean v. Huddleston,* —— U.S. ——, 103 S.Ct. 683, 686–87, 74 L.Ed.2d 548 (1983).

enhanced because of the definite and short-lived nature of the contract. A significant factor in options trading is that the purchaser pays only a premium on the original purchase of the option.

In the present case, General Dynamics was not privy to any contract with the plaintiff; at no time did it consent to issuance, sale, or purchase of the options. It is fundamental for our understanding that the purchase of the options did not represent contribution of capital to the corporation. Judge Lasker in *O'Connor & Associates v. Dean Witter Reynolds, Inc.,* 529 F.Supp. 1179 (S.D.N.Y.1981), further expands the contrast between the share and option holder. He wrote:

> The relationship between corporate insiders and shareholders stands in stark contrast to the lack of relationship between the corporate insiders and options traders. While it is true that shareholders and options traders both rely on the fortunes of corporations, the dispositive distinction is that the options trader has no equity interest in the corporation by virtue of his selling or purchasing an option on the corporation's stock. He is owed no special duty by the officers and directors of the corporation because, quite simply, the corporation is not run for his benefit. He has contributed no equity to the corporation and, in the event of insider wrongdoing, he has no right to bring suit to make the corporation whole. Moreover, while the option writer may obligate himself in the future to purchase shares of the corporation (in the event a "naked option" is exercised), this purchase is solely for the purpose of turning the shares over to the other contractual party, not for the purpose of investing in the fortunes of the corporation. Whatever relationship this may create with the corporation, it cannot be said that it rises to the level of a relationship of trust and confidence between the options trader and the corporate insider. In short, as a shareholder one is entitled to the benefits of a trust relationship. As an options trader, one is not.

*Id.* at 1184–85.

The absence of a relationship of trust and confidence, as described above, led the district court to dismiss plaintiff's complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure.

In *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), the defendant, a printer's employee, used confidential information delivered to his employer for printing by potential acquiring companies in connection with planned corporate takeovers. The defendant used the information to purchase stock in the target companies before the takeover attempts were announced, without disclosing his inside information to the persons from whom he purchased the stock. After the takeover bids were publicly announced, the printer sold the stock and made large profits. An indictment was returned charging him with violation of section 10(b) and rule 10b–5. He was found guilty.

The Supreme Court reversed the conviction on the ground the defendant did not have a duty to disclose his information to either the target company or the sellers of its stock. As the Supreme Court held:

> [O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them."

*Id.* at 228, 100 S.Ct. at 1114 (quoting Restatement (Second) of Torts § 551(2)(a) (1977)).

Plaintiff argues that *Chiarella* can be distinguished because General Dynamics is an "insider" and Chiarella was not. This may be true, but plaintiff fails to demonstrate that General Dynamics as an insider owed any special duty to the plaintiff who merely held an option to buy General Dynamics' stock from a third party. There simply existed no relationship of trust and confi-

dence between the parties. As *Chiarella* makes clear, "liability is premised upon a duty to disclose arising from a relationship of trust and confidence *between parties to a transaction.*" 445 U.S. at 230, 100 S.Ct. at 1115 (emphasis added). It is true that when a general investor buys stock of a corporation on the public market there exists no contract between the corporation and the buyer. However, as suggested by Chief Judge Learned Hand in *Gratz v. Claughton,* 187 F.2d 46, 49 (2d Cir.), *cert. denied,* 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951), "the director or officer assumed a fiduciary relation to the buyer by the very sale." Upon the purchase of the call option by plaintiff, the same cannot be said concerning the relation between the officers of General Dynamics and the plaintiff. They were still complete strangers and ordinarily no duty would be owed.

Laventhall asserts, however, that General Dynamics, as an insider, possessed a general duty "to protect the investing public and to secure fair dealing in the securities markets by promoting full disclosure of inside information so that an informed judgment can be made by all investors who trade in such markets." *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 235 (2d Cir.1974); *see also United States v. Newman,* 664 F.2d 12, 15–17 (2d Cir.1981).

▆▆ It is important, however, to emphasize that no cause of action arises under section 10(b) or rule 10b–5 simply because an insider has inside information and fails to disclose it. The duty arises only where there is a breach of the rule that an insider must "disclose or abstain" from trading. *Fridrich v. Bradford,* 542 F.2d 307, 318 (6th Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 769 (1977). The *sine qua non* in every private action under section 10(b) is unauthorized trading of securities in the same market as the persons damaged. *See Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 169 (2d Cir.1980). In the present case, for example, plaintiff must concede that his claim for damages could not be asserted had General Dynamics not purchased securities in the market. Assum-

ing it had not done so, even though it possessed inside information, plaintiff would have sold his options at the same loss he now claims without any potential claim for relief. We think this illustration necessarily points up the need to show some transactional nexus between defendant's trading and plaintiff's loss. Had plaintiff been contemporaneously trading in the same market, that is, buying and selling common stock at the same time defendant was trading, there would arguably exist a transactional nexus that defendant had profited through the purchase of stock, whereas plaintiff contemporaneously had sustained a loss through the sale of his stock due to the imbalance of information. The legal justification for liability of the corporate insider to the outside uninformed investor is that if the insider trades on the basis of the inside information it may profit at the expense of outside investors who are disadvantaged in the same or similar transaction by lack of the inside information. Thus, in this hypothetical transaction there is a direct nexus between the defendant's gain and the plaintiff's loss.

▆▆ However, the same analysis cannot be applied to a transaction between an options holder dealing with a third party and the corporate insider or his tippee dealing with shares of stock. There is only a speculative relationship between the insider's trading and the alleged loss caused to the options holder. It may be true that the nondisclosure may have had some indirect effect on the option premium, but the insider's trading of stock on the stock market has no transactional nexus with the option holder's loss on the options exchange. *Cf. Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 94–95 (2d Cir.1981) (duty owed only to those investors trading contemporaneously in time with the insider). Here defendant's purchase of stock, if done wrongfully as claimed, could not in any way be asserted as the basis for plaintiff's alleged loss because the parties were not dealing in the same market. The defendant's alleged illegal gain is remote and totally speculative in relation to the plaintiff's loss in a different market, even though the

plaintiff is a member of the investing public. We find there must be some special relationship between plaintiff and defendant before a duty of disclosure arises. Here there is none. Plaintiff is not trading with the insider or the insider's company. He has bought no interest in it. He is a member of the investing public but he is not investing in the defendant's company. As we said in *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040 (8th Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978):

> In order to prevail in an action for securities fraud under § 10(b) and Rule 10b–5, a plaintiff must show some causal nexus between the defendant's wrongful conduct and his (the plaintiff's) loss. This requirement preserves the basic concept that causation must be proved else defendants could be held liable to all the world.

*Id.* at 1048 (footnote omitted).[4]

Plaintiff relies on *O'Connor & Associates v. Dean Witter Reynolds, Inc.,* 529 F.Supp. 1179 (S.D.N.Y.1981), wherein the court found options traders had standing to sue insiders of a corporation and their tippees who were dealing with undisclosed inside information. Judge Lasker reasoned: "Consequently, by virtue of their *fiduciary* duty to the corporation and its shareholders, corporate insiders become subject to the *separate* duty to either 'abstain or disclose.'" *Id.* at 1187 (emphasis original).[5] Notwithstanding this reasoning, we find no standing in the present case since plaintiff and defendant lacked any transactional connection in their trading. In *O'Connor* Judge Lasker emphasized that defendant was alleged to be fraudulently trading in call options. Significantly the court observed:

> Moreover, it was the defendants' own choice to trade in options rather than stock, and if, as O'Connor alleges, the defendants' options trading was fraudulent, there is no good reason to permit them to avoid compensating those directly injured by their conduct. Further-

---

**4.** Plaintiff may contend, on the basis of *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), that causation is presumptively established by defendant's trading without disclosure. We disagree. *Affiliated Ute* involved parties that had dealt directly with each other and there clearly was a duty of disclosure owed. The plaintiffs there had a right to expect the defendants would fully disclose all material information. There is no such relationship in the instant case. "The type of relationship existing between plaintiffs and defendants in *Affiliated Ute* is totally absent here." *Fridrich v. Bradford,* 542 F.2d at 320.

**5.** We recognize that two district courts, one from the Eastern District of Missouri, *In re McDonnell Douglas Corp. Securities Litigation,* [1981–1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,737 (E.D.Mo.1982) (Hungate, J.) and *Backman v. Polaroid Corp.,* 540 F.Supp. 667, 671 (D.Mass.1982) (McNaught, J.), have recognized the right of option holders to sue as a class against corporate insiders selling stock without making material disclosures. We disagree with these holdings. However, we note one commentator agrees with this view:

> Plainly, a narrow reading of *Chiarella,* foreclosing application of the abstain-or-disclose rule to options trading, would open a large loophole for insiders to profit from confidential information. The options trading marketplace as a whole, however, is a mechanism whereby large numbers of persons *do* effectively commit to buy and sell shares, albeit with prices arrived at well before the ultimate transaction and subject to contingencies. Since options marketplace activity does result in at least some persons becoming shareholders of the issuer and others giving up their issuer shares, there is little basis for distinguishing the derivative (options) market from the primary (share) market for disclosure purposes. Then, the issue of what type of security is subject to the insider-trading prohibition is closely related to the question of to whom the duty of disclosure is owed. If the insider's duty is to the entire marketplace, not circumscribed by a privity requirement, it should follow that options trading on the basis of material nonpublic information is prohibited. It can generally be demonstrated that the marketplace involves sales by some persons who are issuer shareholders (or purchases by persons who become shareholders), so that the fiduciary duty is present at least with respect to those persons.

Langevoort, *Insider Trading and the Fiduciary Principle: A Post-*Chiarella *Restatement,* 70 Calif.L.Rev. 1, 42 (1982) (footnote omitted).

more, O'Connor's argument that denying options traders standing in the context of insider trading cases would create a broad loophole in the rules against insider trading is persuasive. The private cause of action for securities fraud was implied in order to provide a mode of compensation for those persons directly injured and to augment the enforcement mechanisms of the securities laws. Excepting options traders from the implied cause of action would work against those purposes.

529 F.Supp. at 1188.

We think our holding is in accord with the Supreme Court's observation that civil remedies in section 10(b) cases should not be extended to those who possess only a tangential relationship to the transaction. *Blue Chip Stamps*, 421 U.S. at 747–49, 95 S.Ct. at 1931–32; *see also Fridrich v. Bradford*, 542 F.2d at 323 (Celebrezze, J., concurring). We find further support for our view that the options holder must at least deal in the same market as the insider in the Second Circuit's opinion in *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88 (2d Cir.1981). The court there was concerned with the breadth of the class of shareholders bringing suit against corporate insiders. In finding that there had to be allegations of a contemporaneous transaction to provide an individual with standing, the court observed:

> To extend the period of liability well beyond the time of the insider's trading simply because disclosure was never made could make the insider liable to all the world. *See Shapiro*, 495 F.2d at 239; *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1292 (2d Cir.1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). Any duty of disclosure is owed only to those investors trading contemporaneously with the insider; non-contemporaneous traders do not require the protection of the "disclose or abstain" rule because they do not suffer the disadvantage of trading with someone who has superior access to information. *See Fridrich v. Bradford*, 542 F.2d 307, 326 (6th Cir.1976) (Celebrezze, J., concurring), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767,

50 L.Ed.2d 769 (1977). This court recently reiterated such a limitation on the scope of liability under rule 10b–5 for insiders trading in the open market:

> The knowing use by corporate insiders of non-public information for their own benefit or that of "tippees" by trading in corporate securities amounts to a violation of Rule 10b–5 ... which may give rise to a suit for damages by uniformed outsiders *who trade during a period of tippee trading.*

*Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 165 (2d Cir.1980) (emphasis added) (citations omitted).

648 F.2d at 94–95.

Similarly, Judge Celebrezze observed in his concurring opinion in *Fridrich v. Bradford*:

> Neither an insider's trading when he is not in possession of material inside information, nor the decision to abstain from trading when he does possess such information, gives rise to a duty of disclosure. That duty arises only when necessary to equalize the information available to outside investors who are actively trading with an insider who is privy to undisclosed material facts. When the insider ceases trading, the informational imbalance ends and the market returns to its normal state.

542 F.2d at 327.

Here, although it would appear there are sufficient allegations of contemporaneous trading, it is clear there is only a speculative nexus between Laventhall, as an options holder, and the corporate insiders dealing with stock. Regardless of General Dynamics' nondisclosure and purchase of stock there was no informational imbalance in the separate transactions performed by the corporation and Laventhall because they in no way can be said to have been "trading" with one another. To urge, as plaintiff does, that the value of the stock directly or indirectly influenced the value of his options does not, without some more tangible connection, create an insider's duty beyond the class of investors section 10(b) and rule 10b–5 were designed to protect.

*Cf. Fridrich v. Bradford,* 542 F.2d at 318–22 (defendants' trading with third parties not causally connected with plaintiffs' claimed loss).

In view of our holding, we find no abuse of discretion in the district court's denial of plaintiff's standing to represent a class of similarly situated stockholders.

Judgment affirmed.