Robert M. DEUTSCHMAN, Plaintiff,

v.

BENEFICIAL CORPORATION, Finn M.W. Caspersen, and Andrew C. Halvorsen, Defendants.

Civ. A. No. 86–595 MMS.

United States District Court, D. Delaware.

July 30, 1987.

Pamela S. Tikellis, of Biggs & Battaglia, Wilmington, Del.; of counsel: Richard B. Dannenberg, Richard Bemporad, and Jill Raskin, of Lowey, Dannenberg & Knapp, P.C., New York City, for plaintiff Robert M. Deutschman.

Charles F. Richards, Jr., Samuel A. Nolen, and Kevin G. Abrams, of Richards, Layton & Finger, Wilmington, Del., for defendants Beneficial Corp. and Finn M.W. Caspersen; of counsel: Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Finn M.W. Caspersen.

Stephen P. Lamb, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., for defendant Andrew C. Halvorsen.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

The last decade has been one of dramatic change and growth in the securities market. One evolution has been the emergence and dynamic rise of trading in options. Not surprisingly, the options market has spawned a host of legal issues. The pivotal question treated in this opinion is whether options traders have standing to bring a cause of action under section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b–5.

Plaintiff Robert M. Deutschman, an options trader, on November 25 and December 12, 1986, purchased listed call option contracts on the common stock of defendant Beneficial Corporation ("Beneficial") at a cost of $14,229. On December 16, 1986, the option contracts had lost 99.8 percent of their value. On December 22, 1986, plaintiff filed a complaint and on March 5, 1987, filed an amended complaint naming Beneficial as a defendant along with Finn M.W. Caspersen and Andrew C. Halvorsen, respectively chairman of the board of directors and chief executive officer of Beneficial. The amended complaint is based on sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b–5.

Count I of the amended complaint alleges with specificity that defendants made a series of materially false and misleading statements to the investing public, by means of their own statements and reports and through the news media, regarding Beneficial's reinsurance business and loss reserves. Plaintiff alleges defendants violated a duty owing to options traders because defendants either knew or should have known the statements were false when made or failed timely to correct these statements when they knew or were reckless in not knowing the statements were no longer true.

The amended complaint also asserts defendants Caspersen and Halvorsen may be held liable as direct participants, aiders and abettors, or "control persons" under section 20(a) of the 1934 Act. Count II of the amended complaint, relying on pendent jurisdiction, asserts a state law claim for negligent misrepresentation.

The amended complaint states that as a result of adverse disclosures to the investing pubic on December 16, 1986 "the market price of Beneficial common stock dropped some 20%. On December 16, 1986, the common stock closed at $57⅛ after trading as low as $54¾, having precipitously declined some 20% from its December 12, 1986 closing price of $65." Docket Item 7, ¶ 41. Plaintiff goes on to note that "[t]he market price of Beneficial common stock ... continued to fall in December, opening on December 19, 1986 at $56, $3 below the close on December 18, 1986, and trading as low as $54.75" and alleges that "the market price of Beneficial common stock would have plunged even further if defendants had not sought to cover up the difficulties suffered in the Company's rein-

surance business." *Id.* ¶ 43. The decline in market value of Beneficial shares rendered plaintiff's option contracts worthless.

The amended complaint is also noteworthy for what it does not contain. It is devoid of any allegation that plaintiff had any relationship whatsoever with Beneficial. It makes no allegation that plaintiff ever purchased, sold, or owned shares of Beneficial common stock. Plaintiff does not allege that Beneficial consented to the issuance, purchase, or sale of call options on its common stock on any securities exchange, or that Beneficial was in any way connected with plaintiff's purchase or sale of call options. Nor does the amended complaint allege plaintiff dealt with Beneficial—directly or indirectly—at any time. Finally, plaintiff does not allege that any defendant traded in the options market or bought or sold Beneficial shares during the critical time period when the nondisclosures or misrepresentations were made and the adverse news surfaced.

On March 20, 1987, defendants filed a motion to dismiss the amended complaint. Dismissal under Fed.R.Civ.P. 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Moreover, the Court must accept as true the allegations of the amended complaint, *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), and construe them favorably to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The motion to dismiss squarely presents the question of whether an options trader has standing to assert a cause of action under section 10(b) of the 1934 Act and SEC Rule 10b–5, where it is not alleged that any of the defendants traded in the underlying stock or in options on the stock. The cases are sharply divided. *Laventhall v. General Dynamics Corp.,* 704 F.2d 407 (8th Cir.), *cert. denied,* 464 U.S. 846, 104

S.Ct. 150, 78 L.Ed.2d 140 (1983); *Bianco v. Texas Instruments,* 627 F.Supp. 154 (N.D. Ill.1985); and *In re McDonnell Douglas Corp. Sec. Litig.,* 567 F.Supp. 126 (E.D.Mo. 1983), hold options traders lack standing. *See Etshokin v. Texas-gulf, Inc.,* 612 F.Supp. 1220 (N.D.Ill.1985). *In re Digital Equip. Corp. Sec. Litig.,* 601 F.Supp. 311 (D.Mass.1984); *Backman v. Polaroid Corp.,* 540 F.Supp. 667 (D.Mass.1982); and *Lloyd v. Industrial Bio-Test Laboratories,* 454 F.Supp. 807 (S.D.N.Y.1978), conferred standing on options traders. In making the standing determination, "[w]e are dealing with a private cause of action which has been judicially found to exist, and which will have to be judicially delimited...." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749, 95 S.Ct. 1917, 1931–32, 44 L.Ed.2d 539 (1975). The Court must address whether the "judicial oak which has grown from little more than a legislative acorn," *id.* at 737, 95 S.Ct. at 1926, should be engrafted with a new limb from which numerous branches would inevitably sprout. For the reasons that follow, I conclude that options traders lack standing under section 10(b) and Rule 10b–5.

Some background explanation of options is essential to understanding the question of whether options traders have standing to assert a Rule 10b–5 violation.[1] The type of stock options plaintiff Deutschman purchased were call options. The call options, or options to buy, gave plaintiff the right, but not the obligation, to buy Beneficial shares at a preset price. Call options are sold by an options writer who must deliver stock if and when a call option is exercised. The options writer, usually found on a regional options exchange, is paid a premium by options purchasers to assume the obligation to deliver the underlying stock. In this case, plaintiff paid a premium of $14,229 for fifty-five option contracts, which conferred upon him the right to receive 5,500 shares of Beneficial stock.

The purchaser of a call option has two ways to profit from the trading in options

---

1. The summary explanation in the text is gleaned from Seligman, *The Structure of the Options Market,* Fall 1984, Journal of Corporate Law 141. A more comprehensive examination of the options market is contained in that article.

on the secondary market. The option may be exercised, earning a profit if the market price of the underlying security exceeds the sum of the exercise price, the premium, and transaction costs. Alternatively, if the price of the underlying security increases the option contract may be sold, earning a profit if the sale price of the contract exceeds the sum of the original premium and transaction costs. The latter alternative is by far the most frequently employed method of earning a profit on options.

Options are a highly leveraged way of making profit by correctly predicting the direction and extent of movement in a particular stock.[2] By the same token, trading in options is far more speculative than purchase of the underlying stock because of the definite and short duration of the contract. If a call option contract cannot be sold because the price of the underlying stock did not rise as far as anticipated, all or part of the premium may be lost.

■ Defendants argue that because there is no transactional or fiduciary relationship between the options trader and the issuer of the underlying stock, the issuer owes no duty to the options trader under section 10(b) and Rule 10b–5. Defendants rely on *Chiarella v. United States,* 445 U.S. 222, 228–30, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348 (1980), in which the Supreme Court held that a duty to disclose material information arises only if a "relationship of trust and confidence" exists between the defendant and the injured party. The defendant in *Chiarella* was a printer who inferred the identity of a corporation that was the target of a takeover attempt from documents sent to his employer for printing. Using this confidential information, the defendant purchased shares in the target corporation, and then sold the shares at a profit immediately after the takeover was made public. The Court found the defendant did not violate section 10(b) and Rule 10b–5, although he purchased shares with improperly obtained inside information, because he was not a corporate insider and was not a fiduciary or agent of the injured sellers. *Id.* at 232–33, 100 S.Ct. at 1116–17; *see Dirks v. Securities & Exch. Comm'n,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983).

In *Laventhall v. General Dynamics Corp.,* 704 F.2d 407 (8th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983), the Eighth Circuit Court of Appeals relied on *Chiarella* in holding that no relationship existed between options traders and the issuer of the underlying stock where the issuing corporation trades in the stock without disclosing material inside information. Although the corporate defendant in *Laventhall* had violated section 10(b) and Rule 10b–5 as to persons also trading in the corporation's stock, there was no "transactional nexus" between the corporation and the plaintiff options traders. *Id.* at 412. Without this transactional nexus, the court held that the duty to disclose does not arise absent "some special relationship" between the plaintiff and defendant in a securities fraud case. *Id.* at 413.

The *Laventhall* rule has been applied to dismiss an action brought by options traders against the issuer of the underlying stock where the issuing corporation traded neither in options nor in the stock, but simply failed to disclose material adverse information. *See In re McDonnell Douglas Corp. Sec. Litig.,* 567 F.Supp. 126 (E.D. Mo.1983). More importantly for purposes of the instant case, standing has also been denied to options traders where the issuer of the underlying stock engaged in affirmative misrepresentations as opposed to mere nondisclosure. *See Bianco v. Texas Instruments,* 627 F.Supp. 154 (N.D.Ill.1985). *But see In re Digital Equip. Corp. Sec. Litig.,* 601 F.Supp. 311 (D.Mass.1984); *Backman v. Polaroid Corp.,* 540 F.Supp. 667 (D.Mass.1982); *Lloyd v. Industrial Bio-Test Laboratories,* 454 F.Supp. 807 (S.D.N.Y.1978). This Court agrees that securities fraud actions brought by options traders against issuers of the underlying

---

**2.** Assuming an average market price per share of $65 during the period in which Deutschman purchased his 55 option contracts, he would have paid $357,500 for the underlying Beneficial stock. Thus, for $14,229 (ignoring a differential in transaction costs), Deutschman was leveraged 25 to one.

stock must be dismissed regardless of the type of misconduct alleged.

There is a vast difference between corporate shareholders and options traders. Shareholders own an equity interest in the corporation; options traders do not. Shareholders are involved in desired capital formation; options traders make no contribution to capital or a contribution so attenuated as to be *de minimis.* Although both shareholders and options traders are affected by the corporation's performance, the brute fact is the corporation is run only for the benefit of shareholders, not options traders. The relationship between shareholders and the corporation is one of trust and confidence, giving rise to a duty owed by the corporation. The nonexistence of a relationship between options traders and the corporation precludes such a duty.

In addition to the duty analysis, the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), squarely supports the denial of standing to options traders.[3] The plaintiffs in *Blue Chip* were offerees of a stock offering made pursuant to an antitrust consent decree. They alleged that affirmative misrepresentations and nondisclosures by the defendant offeror fraudulently induced the offerees not to purchase the stock. The Court denied standing, holding that a private damages action under section 10(b) and Rule 10b–5 is confined to actual purchasers or sellers of securities. *Id.* at 747–49, 95 S.Ct. at 1931–32.

Options traders are, of course, purchasers or sellers of securities as the term "security" is defined by section 3(a)(10) of the 1934 Act. 15 U.S.C. § 78c(a)(10); *see Blue Chip,* 421 U.S. at 750–51, 95 S.Ct. at 1932. The conclusion that plaintiff in the instant case has satisfied the purchaser or seller requirement of *Blue Chip,* however, does not follow from this premise. *Blue Chip* can only be read as requiring that the plaintiff in a section 10(b) case be an actual purchaser or seller of securities *issued by the defendant corporation.* The call options purchased by plaintiff are securities within the meaning of the 1934 Act, but they are not securities in Beneficial. Like the plaintiffs in *Blue Chip,* plaintiff Deutschman is "a complete stranger to the corporation," 421 U.S. at 755, 95 S.Ct. at 1934, without standing to assert a section 10(b) violation.

Notwithstanding the obstacles erected by *Chiarella* and *Blue Chip,* plaintiff appears to assert four discrete theories in support of his claim.[4] First, plaintiff alleges defendants engaged in "manipulative or deceptive" acts in violation of section 10(b) of the 1934 Act. The short answer to this contention is that section 10(b) proscribes manipulative and deceptive acts only "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). Similarly, Rule 10b–5 only prohibits fraudulent acts "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. There is no allegation that defendants either traded in options on Beneficial stock

---

**3.** Other cases in addition to *Blue Chip* and *Chiarella* arguably portend a pronounced trend in the Supreme Court to restrict causes of action under section 10(b) and Rule 10b–5. *See Aaron v. Securities & Exch. Comm'n,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) (scienter required in SEC injunction actions); *Santa Fe Indus. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) (no Rule 10b–5 liability for corporate mismanagement or breach of fiduciary duty claims); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (scienter required in Rule 10b–5 damages actions).

**4.** Plaintiff argues in addition that the interest of options traders in being protected against securities fraud is within the "zone of interests" surrounding section 10(b), and that Congress

has therefore conferred standing on plaintiff. *See Association of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The "zone of interests" test, however, has been applied principally where plaintiffs seek to review administrative action under the Administrative Procedure Act, and is inapposite where Congress has manifested an intent to narrow the class of persons who may sue. *See Clarke v. Securities Indus. Assoc.,* —— U.S. ——, —— n. 16, 107 S.Ct. 750, 758 n. 16, 93 L.Ed.2d 757 (1987) ("the invocation of the zone of interest test ... should not be taken to mean that the standing inquiry under whatever constitutional or statutory provision a plaintiff asserts is the same as it would be if the 'generous review provisions' of the APA apply").

during the period in question or directed to the options market their alleged misrepresentations and nondisclosures. Plaintiff's trading in option contracts is "simply too remote to satisfy the 'in connection with' requirement when the alleged deceptive acts are merely corporate misstatements [and nondisclosures] not directed in any way to the options market." *Bianco v. Texas Instruments,* 627 F.Supp. 154, 161 (N.D.Ill.1985).

Second, plaintiff argues section 10(b) imposes a duty of disclosure that derives from a common law duty to disclose where a corporation has made prior statements on a topic. Therefore, the argument goes, defendants were under a duty to speak the whole truth when undertaking to speak at all and a duty to correct or revise a prior statement that was accurate when made but which became misleading in light of subsequent events. The obvious weakness of this theory is that establishing a duty of disclosure sheds no light on the question of to whom the duty is owed.

Third, plaintiff relies on the "fraud on the market" theory, stated in the amended complaint and recently adopted by the Third Circuit Court of Appeals, to establish a duty owed to options traders. In *Peil v. Speiser,* 806 F.2d 1154 (3d Cir.1986), the Court of Appeals explained:

The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. The misstatements may affect the price of the stock, and thus defraud purchasers who rely on the price as an indication of the stock's value. By artificially inflating the price of the stock, the misrepresentations defraud purchasers who rely on the price as an indication of the stock's value. *The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.* In both cases, defendants' fraudulent statements or omissions cause plaintiffs to purchase stock they would not have purchased absent defendants' misstatements and/or omissions.

Accordingly, we hold that plaintiffs who purchase in a open and developed market need not prove direct reliance on defendants' misrepresentations *but can satisfy their burden of proof on the element of causation* by showing that the defendants made material misrepresentations.

*Id.* at 1160–61 (citation and footnote omitted; emphasis added). The price of call options is closely tied to the price of the underlying stock; the Court therefore assumes without deciding the fraud on the market theory would be applicable to claims by options traders. Moreover, plaintiff properly alleges that defendants' materially false and misleading statements artificially inflated the price of call options on Beneficial stock just as they artificially inflated the price of the stock itself.

▮ Pleading the fraud on the market theory, however, does not give rise to a duty owed by defendants to options traders. The theory is no more or less than an alternative method of proving the causal connection between misrepresentations and nondisclosures, on the one hand, and the plaintiff's injury, on the other. It has no bearing on the relationship between options traders and the issuer of the underlying stock that must exist before the causation element can even come into play. I hold that the fraud on the market theory does not impose on Beneficial a duty owing to plaintiff.

Fourth, plaintiff asserts that defendants owed a duty to the investing public, which includes options traders. As I understand plaintiff's theory, it is based on the unarticulated premise that the federal securities laws have created an absolutely level playing field in which all investors have a right to all information necessary to make investment decisions. Plaintiff reasons that his right as a member of the investing public

364

was violated because defendants' misrepresentations were aimed at the securities market in general,[5] and it was foreseeable that the investing public would rely on them.

Several weaknesses plague plaintiff's duty to the investing public theory. Beneficial, like other corporations on whose stock options are traded, does not control the number of option contracts that may be written; its potential liability to options traders is limited only by the business judgments of options writers. As Chief Judge Cardozo observed, caution is the watchword where the creation of a duty results in "a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). Moreover, if plaintiff is granted standing in this case, the ultimate recovery could only be paid by Beneficial and its shareholders. Such an expansion of corporate liability "will lead to large judgments, payable in the last analysis by innocent investors, for the benefit of speculators and their lawyers...." *Securities & Exch. Comm'n v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2d Cir.1968) (Friendly, J., concurring); *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). There is no reason why options traders, who have chosen a greater risk in exchange for the prospect of a greater return, and who do not meaningfully contribute to capital formation, should recover at the expense of the corporation's shareholders. Finally, restricting liability for misrepresentations and nondisclosures to purchasers and sellers of the corporation's stock amply serves the deterrent purposes of section 10(b) and Rule 10b–5. *See Bianco v. Texas Instruments*, 627 F.Supp. 154, 161 (N.D.Ill.1985).

For the foregoing reasons, I respectfully disagree with the holdings of *In re Digital Equip. Corp. Sec. Litig.*, 601 F.Supp. 311 (D.Mass.1984); *Backman v. Polaroid*

*Corp.*, 540 F.Supp. 667 (D.Mass.1982); and *Lloyd v. Industrial Bio-Test Laboratories*, 454 F.Supp. 807 (S.D.N.Y.1978). I hold that an options trader is without standing to assert a cause of action under section 10(b) of the 1934 Act and SEC Rule 10b–5, where it is not alleged that the defendants traded in the underlying stock or in options on the stock. An order will be entered dismissing Count I of the amended complaint.[6] The order will also dismiss for lack of jurisdiction the pendent state law claim in Count II of the amended complaint. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

---

5. In support of this claim, plaintiff alleges that the misrepresentations were not confined to corporate letters or reports to shareholders, but were also in articles in the Wall Street Journal and press releases intended for the investing public in general.

6. The claim against defendants Caspersen and Halvorsen under section 20(a) of the 1934 Act, of course, falls with the claim against Beneficial.