CARNES, Circuit Judge,
concurring specially:
I concur in the court’s judgment and join the portion of the majority opinion rejecting Clay’s claim that circumstances following Riverwood’s July 1995 press release required subsequent disclosure under § 10(b) and Rule 10b-5. I write separately because the insider trading claim can and should be resolved on a narrower ground than that relied upon by the majority.
The majority holds that the Riverwood stock appreciation rights (SARs) are neither *1270 securities nor “puts, calls, straddles, options or privileges with respect to securities,” and thus do not “trigger the ‘disclose or abstain’ rule of insider trading.” Majority op. at 1269. That is a position that Riverwood itself does not even argue, agreeing instead with the district court that whether SARs are securities is “immaterial.” The district court and Riverwood are right about that. We need not and should not reach the broad question of whether SARs are securities for purposes of insider trading rules. The reason we need not reach that question is that the plain language of § 20A makes it clear that Clay lacks standing to bring a claim under that provision.
In creating a private right of action for victims of insider trading under § 20A, Congress specifically limited standing to those who purchased or sold the “same class” of securities as the inside trader.[1] See Fujisawa Pharm. Co. v. Kapoor, 115 F.3d 1332, 1337 (7th Cir.1997). Riverwood does not argue that SARs cannot be considered securities, or that the exercise of SARs can never be the básis for a § 20A claim. Instead, it contends that the SARs involved in this case cannot give Clay standing to pursue a § 20A claim because Clay purchased common stock in Riverwood, which is not the same class of security as the defendants’ SARs. I believe that position, more modest than the majority’s holding, is correct.
Noting that Riverwood maintained a reserve of common stock shares from which to compensate the SAR holders, Clay contends that the SARs are “so fundamentally intertwined” with Riverwood common stock that they must be considered the same class of security. Clay bases this argument on the fact that the reserve of common stock guaranteed that Riverwood would be able to pay SAR holders when they exercised their rights. It did, and that was its purpose. Clay fails to explain, however, how that makes the SARs the same class of security as the stock held in reserve. The SARs specifically provided that they did not give the bearers any rights with regard to the reserve stock. The reserve of common stock was in place only to guarantee that River-wood would have the funds when the River-wood executives exercised their SARs. Furthermore, the SARs do not give bearers any stock voting rights, nor do they confer the opportunity to purchase shares of Riverwood common stock. Clay offers no support for the proposition that placing stock in reserve to guarantee payment on an obligation such as an SAR makes that obligation the same class of security as the stock in reserve. The logical result of Clay’s position is that if cash is placed in reserve to ensure adequate funds on hand for the exercise of SARs, then those SARs are cash, or at least are of the same class of assets as cash. His position is untenable.
Clay also attempts to draw an analogy between SARs and stock options to support his position that the Riverwood SARs are securities of the same class as Riverwood common stock. Clay relies on Moskowitz v. Lopp, 128 F.R.D. 624, 633-35 (E.D.Pa.1989), in which a district court held that traders of stock had standing to pursue insider trading claims against insiders who traded in stock options, on the ground that the options market and the stock market are sufficiently interrelated that the traders in the stock market are defrauded by insider trading in the stock options market. Clay contends that SARs should also be considered the same class as shares of common stock, because both SARs and stock options depend upon the underlying stock for their value.
Of course, the Moskowitz decision is not binding on us. .Even if it were, Clay’s attempted analogy ignores key distinctions between SARs and stock options. For example, options to buy give the bearer the right to purchase a given number of shares at' a given price, but in order to do that the bearer has to use the market. Such options are traded through the market, and after exercising one, the investor must still sell his shares through the market in order to realize his profit. The Moskowitz court concluded *1271 that options could be the basis for an insider trading claim not because the option value is dependent on the stock value, but because trading in options affects the price of the underlying stock as well. See Moskowitz, 128 F.R.D. at 635. Insider trading in options could have a damaging effect on common stock.
In contrast, the Riverwood SARs cannot be traded through the market, and the bearer does not need to go through the market to realize his profit. In this case at least, the exercise of SARs did not affect the market in common stock as options would have, because Riverwood did not sell any of the reserve stock to make the cash payments to the holders. See Seinfeld v. Hospital Corp. of Am., 685 F.Supp. 1057, 1065 n. 9 (N.D.Ill.1988) (noting that exercise of SAR is exercise of right to direct cash payment). As a result, Clay’s analogy to stock options is not a persuasive one.
Because Congress clearly confined § 20A standing to individuals who purchased or sold the same class of securities as the inside trader, and Clay does not fall into that category, Clay has no cause of action for insider trading under § 20A. Despite Congress’ unambiguous intent, Clay argues that as a matter of policy the differences between SARs and his common stock are minor and should not prevent us from considering SARs and common stock as securities of the same class. The only case law that Clay offers in support of that contention, however, is a statement (from an opinion offered years before § 20A was enacted) that securities legislation should be construed “flexibly to effectuate its remedial purposes.” See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228, 235 (2d Cir.1974) (citations and quotations omitted).
Even if we were free to ignore the plain language of § 20A, which we are not, interpreting that provision to effectuate its remedial purpose would not lead us to the conclusion that Clay urges on the Court. Insofar as it requires contemporaneous trading of the same class of securities, § 20A exemplifies the “fraud on the market” theory as a justification for prohibitions on insider trading. The crux of the fraud on the market theory is that a trader with inside information is able to exert an'unfair advantage over other traders in the same market; even if other traders do not purchase directly from him, they are nonetheless adversely affected by the insider’s trading. See Basic Inc. v. Levinson, 485 U.S. 224, 241-45, 108 S.Ct. 978, 988-90, 99 L.Ed.2d 194 (1988) (discussing rationale behind fraud on the market theory); Boss v. Bank South, N.A., 885 F.2d 723, 739 (11th Cir.1989) (en banc) (Tjoflat, J., specially concurring) (same); Lipton v. Documation, Inc., 734 F.2d 740, 745-46 (11th Cir.1984) (adopting fraud on the market theory). In the present case, however, the defendants’ exercise of their SARs was wholly removed from the market. Clay has presented no evidence that the SARs affected either his decision to purchase Riverwood stock or the value of that stock when he made his purchases.
In conclusion, Clay’s common stock is not of the “same class” as the Riverwood SARs within the meaning of § 20A. Thus, he cannot prevail on his § 20A claim. It is on that basis, instead of the broader one about whether SARs are securities at all, that the Court should decide this case.

. Clay contends that § 20(d) of the 1934 Act, codified at 15 U.S.C. § 78t(d), which makes unlawful insider trading not only of a security, but of any “privilege with respect to such security” eviscerates the same class requirement. In view of the fact that § 20A was added in 1988, long after § 20(d) was enacted, and the fact that § 20A expressly requires that the inside trader and the victim trade securities of the same class, Clay’s argument is not persuasive.